# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RANDA JONES,**

    **Plaintiff,**

    v.                                        Civil Action 2:20-cv-2316
                                            Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Randa Jones ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability, Disability Insurance, and Supplemental Security Income benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 13). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

### I.    BACKGROUND

Plaintiff filed her application for Title II Period of Disability and Disability Insurance and for Title XVI Supplemental Security Income Benefits on March 13, 2017, alleging that she had been disabled since November 25, 2009. (R. 236.) Following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Lisa B. Martin (the "ALJ") held a hearing on March 21, 2019. (*Id.* at 36–64.) At the hearing, Plaintiff,

represented by counsel, appeared and testified. (*Id.*) Vocational expert Patricia McFann (the "VE") also appeared and testified at the hearing. (*Id.*) On May 22, 2019, the ALJ issued a decision denying benefits. (*Id.* at 12–27.) On March 9, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff raises three issues in her Statement of Errors: (1) the residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ failed to incorporate limitations that adequately account for Plaintiff's headaches; (2) the RFC is not supported by substantial evidence because the ALJ failed to incorporate limitations that adequately account for Plaintiff's limitations in concentration, persistence, and pace; and (3) the ALJ erred at step three by not concluding that Plaintiff's fibromyalgia met or medically equaled a Listing. (Pl.'s Statement of Errors, 5–14, ECF No. 14.)

## II. ALJ'S DECISION

On May 22, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–27.) At step one of the sequential evaluation

process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2013, the beginning of the period at-issue.[2] (*Id.* at 15.) At step two, the ALJ found that Plaintiff had the severe impairments of pseudotumor cerebri with intracranial hypertension and shunt placement disorder, headache disorder, fibromyalgia, chronic fatigue syndrome, lumbar spine disorder, obesity, depression, and anxiety. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–18.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except as follows. The claimant is precluded from all ladder, rope, or scaffold climbing, and is limited to occasional postural motions otherwise. The claimant may have no exposure to dangerous work hazards (unprotected heights and exposed moving machinery), and no exposure to extreme heat, humidity, or cold conditions. She is limited to routine, simple tasks, work not requiring a fast assembly quota pace as defined at hearing, work involving only occasional required work interactions with coworkers,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The ALJ considered only the period beginning April 30, 2013, because a previous application by Plaintiff for period of disability, disability insurance benefits, and supplemental security income was denied on April 30, 2013. (R. 12.)

3

supervisors, and public, and work allowing for off task behavior of up to 3% of the workday. She is limited to occasional near visual acuity tasks.

(*Id.* at 18.) At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 25–26.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 26.)

### III. RELEVANT RECORD EVIDENCE

Plaintiff's contentions of error relate to her headaches; her abilities to maintain concentration, persistence, and pace; and her fibromyalgia. Thus, the Court will focus its review of the record to evidence that pertains to those conditions.

**A. Headaches**

**1. Medical Records**

From 2009 through 2018, Plaintiff repeatedly reported headaches to her providers, and she was diagnosed with pseudotumor cerebri. (*See e.g.*, R. 327, 470, 489, 548, 562, 567, 837, 1044.) At times, she sought treatment for her headaches at an emergency department. (*See e.g.*, *id.* at 355, 386, 519, 1038.) On a few occasions, Plaintiff denied experiencing routine headaches. (*See e.g.*, *id.* at 439, 1004.) In February 2012, Plaintiff had a lumbar puncture to treat the pseudotumor cerebri. (*Id.* at 453.) Two days after the procedure, she reported to the emergency department with a severe headache that was caused by a leak of spinal fluid from the lumbar puncture. (*Id.* at 457–63.) Plaintiff also had a shunt placed in her neck to treat the pseudotumor cerebri in 2013. (*Id.* at 567–612.) Following the procedure, her doctors concluded that the shunt was working properly, but Plaintiff indicated that she was continuing to have headaches. (*Id.* at 578, 583.) In September 2018, Plaintiff had a procedure to adjust her shunt because she had developed a blood clot around the shunt. (*Id.* at 882–84.) After spending one night in the

4

hospital, she was able to ambulate independently and her pain was well controlled, so she was discharged to go home. (*Id.* at 882.)

### 2. Plaintiff's Hearing Testimony

Plaintiff testified that the shunt helped with her headaches, but also said that she still got headaches. (R. 45–46.) She said that she has prescription medication for migraines that "helps a little" but that she still has headaches "about four or five times a month that are pretty bad." (*Id.* at 46.) She testified that lifting heavy objects could trigger a headache. (*Id.* at 49.) Plaintiff said that she had a "constant pressure" in her head and that her doctors told her that it is "just going to be like this now." (*Id.* at 58.)

## B. Concentration, Persistence, and Pace

### 1. Medical Records

Plaintiff consistently reported symptoms of depression and anxiety from 2011 through 2019. (*See, e.g.*, R. 412, 556, 1004, 1053, 1175, 1181, 1287.) Plaintiff has been diagnosed with bipolar disorder, post-traumatic stress disorder, generalized anxiety disorder, panic attacks, and a depressed mood. (*See, e.g., id.* at 556, 1181, 1184.) Plaintiff took medication for her mental health; she sometimes reported it improved her symptoms, but other times reported no improvement or worsening symptoms. (*See, e.g., id.* at 1044, 1078, 1087, 1296.) Plaintiff did not always take her medication as prescribed. (*See, e.g., id.* at 1075, 1078.) Plaintiff also consistently reported difficulties sleeping. (*See, e.g., id.* at 1132, 1159, 1313.) She repeatedly expressed that she has trouble "concentrating and focusing on daily tasks." (*See, e.g., id.* at 816, 819, 822, 1278, 1281, 1284.) However, a 2011 medical examiner noted that Plaintiff's "[i]ntellectual functioning appears normal." (*Id.* at 419.)

Plaintiff had a consultative psychological examination in October 2011. (R. 409–17.) During the examination, Plaintiff reported that she was experiencing anxiety and depression

5

"because of her health problems." (*Id.* at 410.) Plaintiff also said that she generally had trouble sleeping, but that she would sometimes "sleep just fine." (*Id.* at 412.) She reported having feelings of sadness and frustration. (*Id.*) The examiner found that Plaintiff had no indications of "a formal thought disorder" or "delusional thinking." (*Id.* at 413.) The examiner concluded that the "[a]vailable information would indicate[] that from an emotional and psychological perspective [Plaintiff] would be able to maintain attention and concentration and would be able to maintain an[] acceptable persistence and pace." (*Id.* at 415.)

Plaintiff had another consultative psychological evaluation with the same examiner in April 2013. (R. 523–30.) Plaintiff told the examiner that she was applying for SSDI "because of multiple health problems as well as difficulties with depression and anxiety." (*Id.* at 524.) She complained of difficulty sleeping, difficulties with memory, and symptoms of depression. (*Id.* at 526–27.) Plaintiff expressed difficulty relaxing and voiced worries over her health and becoming a mother. R. (*Id.* at 526.) The examiner described Plaintiff's mood as "mostly depressed with underlying features of anxiety." (*Id.* at 527.) This time, the examiner opined that Plaintiff would have difficulties with the abilities to maintain acceptable attention, concentration, and pace in a work setting. (*Id.* at 530.)

### 2. Plaintiff's Hearing Testimony and Reports

During her hearing testimony, Plaintiff said that she was seeing mental health professionals and that she was taking medication to treat her bipolar disorder. (R. 51–52.) Specifically regarding issues with memory and concentration, Plaintiff testified as follows:

> It's hard for me to concentrate on—I can't even watch a full program on TV. I've tried. I don't have any hobbies anymore. I can't read a book. I've lost friends. I can't concentrate on anything. I can't focus on anything. . . . I can't remember stuff anymore. I forget everything. It's gotten to the point where I can't hardly remember anything anymore. My dad I live with him and he gives me a really hard time because I forget the smallest things anymore. I can't even think of an example,

> but I forget everything it seems like. I know people say that but it seems like I go to the extreme with forgetting things.

(R. 56–57.) In a May 23, 2017 function report, Plaintiff said that she had memory difficulties and wrote that she "gets confused easily" when following spoken directions. (R. 284.) She represented that she was able to pay attention for two-to-three minutes. (*Id.*)

### 3. State Agency Reviewers

At the initial level, the state agency psychologist, Paul Tangeman, Ph.D., opined that Plaintiff was moderately limited in her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions. (R. 80.) He found that Plaintiff was otherwise not significantly limited in her abilities related to concentration and persistence. (*Id.*) He further opined that Plaintiff "is able to maintain [attention, concentration, persistence, and pace] for simple and multi-step tasks in environment [without] strict production quotas or time constraints." (*Id.*) At the reconsideration level, Sandra Banks, Ph.D., concurred with all of Dr. Tangeman's opinions except that she found that Plaintiff was not significantly limited in her ability to make simple work-related decisions. (*Id.* at 124.) She further opined that Plaintiff "is able to maintain [attention, concentration, persistence, and pace] for simple, one to three-step tasks in a work environment that does not have strict production quotas or time constraints." (*Id.* at 124–25.)

## C. Fibromyalgia

### 1. Medical Records

Throughout the record, Plaintiff reported back and hip pain, and generalized muscle and joint pain. (*See e.g.,* R. 381, 508, 535–36, 566, 777, 808, 998.) At a March 2012 visit to the emergency room, Plaintiff reported back pain and said that it hurt to sit. (*Id.* at 386.) Plaintiff

7

was diagnosed with fibromyalgia in May 2016. (*Id.* at 1015.) In December 2016, Plaintiff's doctor noted that she "present[ed] with fibromyalgia." (*Id.* at 784.) In addition to pain, Plaintiff reported that she had difficulty falling asleep, "exercise intolerance, anxiety, temporomandibular joint discomfort, nausea and depression." (*Id.*) She had all the tender points for fibromyalgia. (*Id.*)

During 2017, Plaintiff had fibromyalgia follow-up appointments, at which she sometimes reported minor improvement with medications, and continuing fatigue and morning stiffness. (*See, e.g.,* R. 787, 790, 1324.) In June 2018, Plaintiff reported pain from the fibromyalgia, but indicated that medication was helping. (*See, e.g., id.* at 1126, 1138.)

### 2. Plaintiff's Hearing Testimony

Plaintiff testified about her fibromyalgia as follows:

> It affects me greatly. My muscles are constantly stiff and cramping, there are some days I can't even get out of bed because of it while that affects the depression too because of it. . . . So the fibromyalgia I just hurt all over.

(R. 53.) Plaintiff said that her muscles cramp all over and that the cramping happens on a regular basis. (*Id.* at 53–54.) She testified that she takes a muscle relaxant that helps somewhat. (*Id.* at 54.) In a 2017 function report, Plaintiff said that "Depression and fibromyalgia takes everything away from me." (*Id*. at 279.) She explained that it was difficult for her to take care of her son and to tend to her personal hygiene. (*Id.* at 280–82.) She said that she could not go shopping because of fatigue and pain. (*Id.* at 282.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.     ANALYSIS

Plaintiff raises three issues in her Statement of Errors. (Pl.'s Statement of Errors 5–14, ECF No. 14.) First, Plaintiff argues that the RFC is not supported by substantial evidence because, according to Plaintiff, the ALJ erred in her consideration of Plaintiff's headaches. (*Id.* at 5–7.) Second, Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ erred in her consideration of Plaintiff's limitations on concentration,

9

persistence, or pace. (*Id.* at 7–9.) Finally, Plaintiff asserts that the ALJ erred in her analysis of Plaintiff's fibromyalgia. (*Id.* at 10–14.) The Court considers each in turn.

**A.     The ALJ did not err by not including headache-specific limitations in the RFC.**

Plaintiff argues that the RFC is not supported by substantial evidence in part because the ALJ found that Plaintiff's headaches were a severe impairment, yet did not include any functional limits related to the headaches in the RFC. (Pl.'s Statement of Errors at 5–7, ECF No. 14.) Plaintiff contends that this is reversible error. (*Id.* at 7.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ is charged with the final responsibility for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner"). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996).

In this case, the ALJ explained how she considered Plaintiff's headaches when she crafted the RFC as follows:

> [Plaintiff's] assertion that she has not been able to work at any time since the alleged disability onset date is not supported by objective medical evidence. The record documents a longstanding history of pseudo tumor cerebri with multiple lumbar puncture procedures, as well as complaints of double vision and headaches, but only with mild bilateral nerve swelling (see, for example, Exhibits 4F, 11F, 12F, BF, 14F, 16F, 18F). However, the preponderance of the evidence supports a conclusion that these conditions have not been of disabling severity, and that these conditions are adequately accounted for by the limitations in the residual functional capacity above for a reduced range of light work.
>
> * * *
>
> Although she was hospitalized for complaints of a headache and back pain on July 29, 2013, her symptoms improved after the neurosurgeon adjusted her shunt, which he said was a "sign that her shunt is indeed working." She was discharged in improved condition the next day, on July 30, 2013 (Exhibit 21F, pages 19-20).
>
> At the next visit with Dr. Patcha, which did not occur until October 2014, the claimant complained of back pain, but she made no mention of any headaches. (Exhibit 20F, page 20). In January 2017, she specifically denied complaints of headaches or double/blurred vision (Exhibit 20F, page 26; see also duplicates at 31F). In May 2018, she said her headaches were "a lot better." She also said her vision was improved and she only occasionally experienced double vision (Exhibit 31F, page 13). The claimant stated in November 2018 that her headaches were 50% better (Exhibit 31F, page 43).
>
> Meanwhile, the claimant presented to University Hospital in August 2016, for complaints of daily headaches and double vision for the past 18 months. Steven Katz, M.D., referred to only subjective vision disturbance and a congenital anomaly of the optic disc. He noted that HVF testing was stable from prior testing in June 2013 and showed no evidence of optic disc swelling or an optic neuropathy. He said he did not need to see the claimant again for another year (Exhibit 21F, pages 3–6). Dr. Katz also diagnosed a headache disorder in June 2016, but CT scans of the head have been normal (see, for example, Exhibit 21F, page 148).

(R. 19–20.)

The ALJ did not err in her assessment of Plaintiff's headaches. She considered the record as a whole and concluded that Plaintiff's headaches were not disabling and concluded the limitations in the RFC adequately accounted for Plaintiff's conditions, including her headaches. Plaintiff refers in generalities to her headaches to support her assertion that she would miss substantial time from work. (Pl.'s Statement of Errors 6–7, ECF No. 14.) Although the record

contains many treatment notes related to Plaintiff's headaches, Plaintiff does not cite to, nor can the Court find, any medical professional who opined that Plaintiff would be off-task for at least ten percent of the time or miss substantial time from work. Thus, "Plaintiff's unsupported allegations are insufficient to show that the ALJ erred by omitting these limitations from her RFC." *Kirkhart v. Comm'r of Soc. Sec.*, No. 1:18-cv-241, 2019 WL 2314860 at *7 (S.D. Ohio May 31, 2019); *see also Duncan v. Comm'r of Soc. Sec.*, No. 1:16-cv-1003, 2018 WL 1417327, *3 (S.D. Ohio Mar. 22, 2018) ("Plaintiff has also failed to cite to medical evidence in the record which would support additional limitations in the RFC.").

Moreover, the record contains evidence that supports the ALJ's decision not to include those limitations in the RFC. As the ALJ pointed out, after Plaintiff was hospitalized for complaints of headache and back pain in July 2013, her symptoms improved with treatment and she was discharged the next day. (R. 20, 578–79.) Plaintiff also told her treatment providers in January 2017, May 2018, and September 2018 that she was not experiencing headaches or that her headaches were "a lot better." (R. 20, 556, 897, 1015.) Thus, this substantial evidence supporting the ALJ's decision means that the ALJ's findings were within the his permissible "zone of choice," and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406; *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

**B.     The ALJ did not err in her mental RFC assessment.**

Next, Plaintiff argues that the ALJ's RFC failed to adequately account for the limitations in concentration, persistence, or pace as opined by the State Agency reviewers (Pl.'s Statement of Errors at 7–9, ECF No. 14.) Plaintiff contends that the ALJ's restrictions in both the

12

hypothetical and RFC fail to "accurately and fully convey her limitations in concentration, persistence and pace." (*Id.*)

Like other medical source opinions, the ALJ must consider state agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); SSR 17-2p, 2017 WL 3928306 (March 27, 2017), at *4 (noting "[a]lthough adjudicators at the hearings and AC levels are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision."). However, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Here, the ALJ provided the following discussion of the state agency psychologists' opinions:

> State agency reviewing psychologist Paul Tangeman, Ph.D., completed a mental residual functional capacity assessment in June 2017. Dr. Tangeman offered his opinion that the claimant was limited to understanding, remember, and following simple and multi-step tasks in an environment involving no strict production quotas or time constraints, occasional interaction with others, and occasional changes in daily routine (Exhibit 1A, pages 15-17; see also 2A). Sandra Banks, Ph.D., reviewed the updated record in August 2017. Dr. Banks essentially affirmed Dr. Tangeman's assessment, except she clarified the claimant was limited to occasional and superficial interactions with others (Exhibit 5A, pages 15-17; see also 6A).
>
> The undersigned gives significant weight to the opinions of the State agency reviewing psychologists, as their assessments are generally supported by objective signs and findings in the preponderance of the record, including the records submitted after their assessments. However, the undersigned gives less weight to their conclusion that the claimant experiences moderate impairments in the

13

> "paragraph B" areas of understanding, remembering, or applying information and adapting or managing oneself. For the reasons discussed in Finding Number 4 above, the undersigned finds only mild difficulties in these areas. To account for the claimant's moderate limitation [in the areas of concentration, persistence, and pace], the undersigned has limited the claimant to the range of routine, simple work described above, with no fast assembly quota pace, only occasional interaction with others, and the ability to be off task for 3% of the workday. No treating mental health source has provided an opinion to the contrary.

(R. 23.) Thus, the ALJ agreed with the state agency psychologists—and with Plaintiff—that she has moderate limitations in concentration, persistence, and pace. (*See* R. 80, 124.) The ALJ accounted for the limitations opined by the state agency psychologists by limiting Plaintiff to "routine, simple tasks, work not requiring a fast assembly quota pace as defined at hearing, work involving only occasional required work interactions with coworkers, supervisors, and public, and work allowing for off task behavior of up to 3% of the workday." (R. 18.)

Plaintiff argues that the ALJ failed to account for all her limitations in this area, but does not identify any limitations the ALJ should have included, but did not include. Plaintiff asserts that the ALJ "failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace," but these alleged limitations are adequately addressed by the restrictions that Plaintiff cannot work with a fast assembly quota pace and that she will be off task for three percent of the day. Accordingly, the Court finds that the ALJ did not err in her consideration of Plaintiff's limitations in the areas of concentration, persistence, and pace.

Plaintiff also argues that the ALJ gave a faulty hypothetical to the VE. (Pl.'s Statement of Errors 9, ECF No. 14.) According to Plaintiff, the VE hypothetical, like the RFC, did not adequately account for her limitations in concentration, persistence, and pace. (*Id.*) For the same reasons outlined above, the Court finds that the ALJ's hypothetical questions to the VE were valid.

C. **The ALJ did not err by finding that Plaintiff's Fibromyalgia did not meet or medically equal a Listing.**

Plaintiff next argues that the ALJ erred in finding that her fibromyalgia does not meet or medically equal a Listing. (Pl.'s Statement of Errors 10–14, ECF No. 14.) According to Plaintiff, the record evidence supported a finding that Plaintiff's fibromyalgia equaled Listing 14.09. (*Id.*) Plaintiff also contends that the "ALJ erroneously disregarded the substantiated evidence of the record and stated that the record does not 'show the requisite constitutional symptoms (severe fatigue, fever, malaise or involuntary weight loss) with marked limitation of daily activities, marked limitation in social functioning, or marked limitation in task persistence, as described in section 14.09(D).'" (*Id.* at 12, citing the ALJ decision.) Put another way, Plaintiff asserts that the ALJ cherry-picked the evidence related to Plaintiff's fibromyalgia.

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

It is well established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). The Sixth Circuit has further explained that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted)).

Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Here, the ALJ provided the following discussion of Plaintiff's fibromyalgia at step three:

> There is no listing for fibromyalgia. The Administration, however, has recognized that fibromyalgia may equal a Listing or may medically equal a Listing in combination with at least one other medically determinable impairment. The undersigned has considered this condition under the closest applicable Listing, section 14.09 (inflammatory arthritis), but the record does not document an inability to ambulate effectively or the inability to perform fine and gross movements effectively, as set forth in 14.09(A). The record also does not show the requisite constitutional symptoms (severe fatigue, fever, malaise, or involuntary weight loss) with marked limitations of daily activities, marked limitations in social functioning, or marked limitations in task persistence, as described in section 14.09(D). The

16

> claimant's fibromyalgia also does not produce the signs or findings needed to equal the criteria of any other Listing set forth in the Listing of Impairments.

(R. 16 (internal citations omitted).)

The ALJ did not err in her consideration of Plaintiff's fibromyalgia. As shown above, the ALJ found that Plaintiff's treatment records do not document fever, involuntary weight loss, ambulatory issues or inability to perform fine and gross movements. Although Plaintiff includes a laundry list of citations to the record for other fibromyalgia symptoms, she does not point to any evidence in the record related to the symptoms the ALJ considered under Listing 14.09, nor can the Court find any such record evidence. Plaintiff did express fatigue and low energy, but she also reported improvement with medication. (*See, e.g.,* R. 1126, 1138.) The record further reflects that Plaintiff is capable of performing many activities of daily living, including driving herself to medical appointments, taking care of her young son, doing "all the cooking and cleaning" in her home, and host a holiday dinner. (*See e.g., id.* at 50, 56, 1261, 1274.) Although Plaintiff may be correct that substantial evidence would have also supported a finding that her fibromyalgia met or equaled a Listing, "it squarely is *not* the duty of the district court . . . to re-weigh the evidence [from the administrative hearing]." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 807 (6th Cir. 2008). Because substantial evidence supports the ALJ's step-three conclusion relating to Plaintiff's fibromyalgia, the Court "must affirm the Commissioner's decision." *Rabbers*, 582 F.3d at 651 (quoting *Rogers*, 486 F.3d at 241); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Accordingly, the Court finds no reversible error with the ALJ's consideration of Plaintiff's fibromyalgia.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE